Morales-Morales v. Barr. Mr. Wolfman. Thank you, Your Honor. Petitioner Abigail Morales-Morales. As the case comes to this court, the parties agree that the board's decision must be reversed. The I.J. found that if removed to El Salvador, Ms. Morales would likely be tortured by gang members with the acquiescence of police. This I.J. finding alone requires deferral of removal under CAT, and the government concedes that the board improperly overturned that finding. But the government offers no argument that would justify any result on remand other than reinstatement of the I.J.'s finding. This court should therefore reverse and reinstate. Now let me explain, take some time to explain why. The board's holding that the I.J. clearly erred in regard to the state action question, whether the government would participate or acquiesce, is contained in two conclusory brief paragraphs at the record at pages 10-11. Both of them ignore or distort the record. As to torture by the Salvadoran officials, the BIA said only one thing, that Morales' entire claim boils down to her interaction with a gang messenger dispatched by her cousin from prison. That's simply not accurate. Now the board went on to poo-poo that important fact, and I can explain why that fact is important, and I'll do so right now. Within a day or two of Morales' return to Salvador in 2004, a gang emissary sent by her cousin from prison appeared and threatened her. They wanted her money, and they wanted her to participate in gang extortions. Getting a clear signal that she was in the crosshairs, she stayed less than a week and returned to the United States. But that's not the only fact. First of all, the BIA said that fact wasn't important, but that's the only fact they said was relevant. But what about these facts? Morales had known relationships and interactions with family members other than her cousin who are ranking MS-13 members. She was a junior member herself for several years in Los Angeles. We know from the unrebutted testimony of the expert that the government is particularly, the Salvadoran government that is, is particularly concerned with gang-affiliated individuals returning from the United States because the Salvadoran government believes that's the genesis of its gang problem. Criminal gangs have killed or otherwise threatened several of my client's relatives. Three of them are now dead. Critically, Dr. Borman, again unrebutted on this record, testified that the Salvadoran police frequently identify individuals as gang members or affiliates simply because of their familial relationships. In fact, he testified, uncontested, that he knows of over 100 cases in which innocent familial relations to gang members have been killed on account of those relationships. And Borman testified, finally, that women are particularly vulnerable. When you add up all these other indicia, women are particularly vulnerable to abuses by Salvadoran officials, especially, as I said, to former affiliates who are returning from the United States. So, let me turn to the other, you know, there were two findings. One that there would be... Are you going to address the jurisdictional issue? I can if... Whether we have jurisdiction, that's pretty basic to whether we can do anything to help you. It is basic. It is basic and I realize that the government's concession on jurisdiction is not final because it's jurisdictional. So, let me address that right now. This case is really on all fours with this court's decision in Alvarado. This case, the legal question in this case is whether the clear error standard that the BIA was obligated to apply was violated. And that, this court said in Alvarado, is a clear error of law. Another way of looking at that problem, another way of looking at that problem that's quite similar to the Alvarado statement, but not identical, is what this court said in Okafor. That's at 456 F. 531. There is a legal question, the court said, because both sides agree about the underlying factual matters, the factual sequence is the word that Okafor used, and disagree only about the legal significance of those facts. And as this case comes to this court, there is no dispute of any historical fact. The question is whether the circumstances here meet the legal definition of torture. And I just want to stress that point because it not simply goes to the jurisdiction, but it dovetails with our merits argument. Because the government, to be sure, wishes to have a remand so it can challenge the legal consequence, right? What inferences should be drawn to the factual record as to the Salvadoran government's potential acquiescence? But it contests no historical fact coming either from Morales or from Dr. Borman, and indeed has conceded their credibility. As the I.J. found, the I.J. was able to hear these witnesses, one in person, one by audio, and found that they were credible. And, you know, it's our contention that the BIA therefore had no business overturning those findings. Let me turn, if I could, to the question whether the Salvadoran officials would likely acquiesce in Morales' torture. I talked for a moment about direct torture by the government. Now, I want to talk about acquiescence because on that score, on the acquiescence score, the government has conceded that at the very least there's a need for a remand on that question because of the weakness of the BIA's reasoning. The BIA reversal, this is on record at 11, was based solely on the irrelevant conclusion that country conditions in El Salvador did not change, as it put it, in any salient way between 2002 and 2004. But as the government concedes here, that's just an irrelevancy. The question is what the country conditions would have been in 2017 when this matter came before the immigration judge. And as the government concedes, that, too, is a legal error. But our principal point, and now I'm getting right to the point here because I've now talked largely about what has been conceded here by the government. The principal point is that this is an error that can't be corrected by a remand. And the reason is twofold. First of all, there's just plenty of evidence in this record of the likelihood of government acquiescence. Morales herself testified that the police allow gang members to avoid curfew so that they can engage in extortion. Dr. Borman testified without contradiction that in recent years the government has stopped even investigating the murder of gang members, the theory being, and gang member affiliates like my client, the theory being that every gang member or affiliate is better dead than alive. The Salvadoran police, Dr. Borman testified, will leave gang members off either in the presence of other gang members, leaving the impression that the person is a snitch, or in the territory of the rival gang. And we'll note on this record that one of my client's cousins was killed by a rival gang. The death certificate is in the record. Both of these things predictably lead to torture and often death. So that's the evidence. So there's plenty of evidence in the record to support acquiescence. Remember here, the question is not what the BIA or this court might do in the first instance. The question is, on clear error review, was the decision of the IJ so unreasonable or irrational that clear error has occurred? And I don't think that's a close case. But let me address the final thing, and then if there's no further questions, I'll have a seat, which is that what would this remand look like? The government in its brief, and I've read it several times as carefully as I could, they're not proposing to draw on any new evidence. They're not proposing to call any new witnesses. They're not proposing to add to the record. They just want a do-over. And that's not appropriate. Sure, the remand is the ordinary course, but there's nothing further to be done on remand in this case. At least the government hasn't told us what that would be anywhere in its briefing. So unless the Court has any further questions, I'd like to reserve my time. Yes, you've saved time for rebuttal. Thank you. Mr. Puccini. May it please the Court, Walter Puccini for the Department of Justice. Your Honors, the parties are in agreement that the BIA did commit legal error in reversing one aspect of the This means that this Court should remand on that basis for the Board to apply the clear error standard as it should. Now that is in line with Clear error on what? On a factual determination? On the IJ's factual determination, yes. But factual determinations are barred, right? The BIA can't make factual determinations in the first instance on appeal. That is correct, Your Honor. But it can reverse those findings under clear error review. But we don't have jurisdiction if there's a factual dispute, right? No, no, Your Honor. And that's one of the main reasons why we disagree with the Petitioner's position that this case, that this record, the findings are somehow foreclosed because it would require the Court to engage in an intense fact finding that is basically essentially a factual determination. And that would run counter to the Court's jurisdiction under Doctrine 2A2C. And so the clearest course of action here would be simply to recognize that the Board clearly erred, remand for the Board to apply clear error standard as the Court has done in several cases, in most cases. Okay, but we can't do that if we don't have jurisdiction. No, Your Honor. But the government does concede that the Board did commit an error of law in applying its clear error standard with respect to the inter-reversing the IJ's decision. Okay, but, I mean, I'll ask it again. Whether you concede it or not, if we don't have jurisdiction, we don't have jurisdiction. No, Your Honor. You're absolutely correct. And, I mean, obviously that's the government's position. It is the Court's prerogative to come out the other way on that, to reject the arguments, as the Court rejects the arguments and the other aspects. And if the Court concludes that it does not have jurisdiction, then at that point dismissal would be. What is the argument in case to support that applying the wrong legal standard for review of evidence at the BIA is a legal error? I think that would be the Alvarado case is on point where it says that the Board cannot simply just state the standard but then not apply it faithfully. And here the Board did state the standard. In fact, the Board got many things correct in its decision. But in reversing the immigration judge's findings with respect to the police claim, there were some findings that did not fit within clear error review and, frankly, did not fit within the analytical framework for a claim under deferral of removal. And most specifically with respect to how the Board subtracted one aspect of the petitioner's claim without explaining how it could do that on a CAD claim. But even so... Mr. Woffman says there's no factual disputes here. Do you agree with that? I do not agree with that, Your Honor. Tell us what in your view are the factual disputes. Well, let me reframe that slightly. We do not view that the immigration judge's findings are irrefutable or sacrosanct. They can be reversed on clear error review should it go back. Now, the Board may very well agree with the petitioners that the IG did not commit clear error. But there are obviously, as we pointed out in our briefs, several findings with respect to the police claim that the Board correctly said were clearly erroneous. And I would just touch on the likelihood of torture one because the immigration judge's findings based on the expert witness's testimony that the petitioner is going to be tortured by the Salvadorian police is simply inconsistent with the facts of what happened to this petitioner in light of the fact that she's been twice removed before to El Salvador and nothing has ever happened to her, in light of the fact that she has never testified once that she even has any concerns about any police action, in light of the fact that all of her family members who have been harmed in El Salvador were never harmed by the police and she's never claimed otherwise, in light of the fact that she has one of her cousins, Patricia, who is similarly situated to her, is currently in El Salvador and there is nothing in the record, there's been no claim that she ever has any fear of the police, in light of the fact that the petitioner's two other cousins who are in prison who are gang members, they've been arrested by the police but there's been no testimony at all that the police are targeting them. So the ultimate predictive finding by the immigration judge is that the police would somehow be involved in the torture of the petitioner. That's absolutely any basis in fact. With respect to the gang claim, we would point out that even the expert witnesses' testimony also agreed with the Department of Homeland Security that the authorities in El Salvador are actively fighting the gang problem there. Now they're not as successful as we wish them to be, but they are, they have programs in place that are trying to address this issue. And that alone would be sufficient in the government's view, it would be sufficient to reverse any acquiescence finding with respect to the gang claim that the IG found the petitioner would be tortured by gangs but to the consent and acquiescence of the Salvadorian government. So we feel that there's plenty of room in this record for there to be a reversal on clear error view. I'm not saying that's what would happen on remand. The board may very well agree with the petitioner that the IG did not clearly err and then this case would go away. And that's one of the reasons why this court should remand. It's in line with the ordinary remand rule and it's in line with a question of judicial resources because the court need not further delve into the other issues. Where is Morales Morales today? She's currently in El Salvador. She's already been deported, removed December 13, 2017. What do we do with that circumstance? Why doesn't the case move? I know you have Nyken v. Holder, but she can continue it after she would move it. But that says it's possible for an active case of controversy to move or persist. But it doesn't hold that that doesn't move the litigation over the BIA appeal. Your Honor, the government recognizes that there is an argument that the case is moot in light of the fact that she's been moved to El Salvador. We have not, however, come to a definitive position on whether mootness should apply where someone has been removed as opposed to voluntarily depart. Somebody voluntarily departs to their country. We would definitely take the position that the case is moot. Here she did not file a stay motion, so there is potentially an argument that the case is moot. But that's not a position that we have definitively. We've said that federal courts will allow the suit to proceed only when some collateral consequence of litigation's outcome persists. It may well, if you invalidate a removal order, that she may become admissible to the United States or whatever else, other consequences. But it's not clear to me that it's not. And these facts that the case is, that removal did not move to litigation. Yes, Your Honor. I don't, the collateral consequence, there are, we don't view this as there being any collateral consequences for the petitioner in light of the fact that she committed a very serious crime that renders her inadmissible. So it doesn't affect her position reentering, being admissible to the United States. What happens if we found it moot? Where are we? What happens from there? I think if the court were to reach that determination, the court should dismiss the petition for review. But the government would request an opportunity to do supplemental briefing on any mootness issues if the court wishes. Well, I understand. My question is what happens if ultimately this court concludes that it's moot? There is no other path to go beyond dismissing the petition for review, Your Honor. If it's moot, it's moot. What is her status then? I'm sorry, Your Honor?  I'm sorry, I did not hear you. What is her status if this case is moot? Well, she didn't have any status to begin with, and she doesn't have any status in the end. She's going to remain in El Salvador, or she can always come back to the United States and ask for protection at the border. That is always available. That's one of the reasons why there are no collateral consequences in this case because outside from the fact that she's inadmissible, she can always raise a cat claim again at the border. But, again, Your Honor, if Your Honor wishes, we would certainly provide supplemental briefing on that issue to fully analyze it because there is also the facilitation of return question.  Now we simply ought to, in effect, let things be. That's what it amounts to. Well, if the court remands on an open record, the petitioner can continue. No, we don't remand. We dismiss. We don't remand the case. He argued that it's pointless to remand. Well, if the court grants the petition for review with some sort of legal finding that the petitioner merits protection under the convention, the Department of Homeland Security would activate its facilitation of return policy and bring her back, Your Honor. If the court remands on an open record to the board, she can continue to litigate her case for El Salvador, and if she prevails at the board, the DHS will do the same. Or if the board determines that she needs to be present for a hearing, for a further hearing, the DHS would do the same. They would facilitate her return to the United States. Your brief, as I read it, repeatedly takes the position that we should dismiss the petition for review for lack of jurisdiction. No, Your Honor. Is that what your brief says? The original brief, that was our position in our original brief. We filed a motion to remand in this case, which this court denied. At that point, the government felt constrained to defend the case to the extent possible. So we've made arguments that hew the jurisdictional limits of 1252A2C, and the petitioner at that point had filed a pro se brief. She did not raise any legal questions or constitutional claims. And in the end, we are not necessarily in agreement with the board's ultimate conclusion that she failed to establish a likelihood of torture, and therefore we defended the case in that manner. After the court appointed counsel, counsel did identify some legal errors, which we agree are present. And at that point, we took the position that the best course of action here is the remand for the board to simply apply the correct course, as it has done in most cases. It follows the ordinary remand rule. This is not a situation where the board has had ample opportunity, as the court explained in the suit, to address an issue and demur. It was before the board once got it wrong, and it should have an opportunity to apply the correct standard of review on remand. This is consistent with Ventura and Thomas. This is also consistent with this court's case law that predates Ventura and Thomas, where the court held that it would not take over the board's efforts and it would instead remand for the board to apply to correctly enforce the board application of its responsibilities. Let me take you back to the jurisdictional question again. The board said it was applying the clear error standard on its review of the facts. A fair, I think, reading of what the board then did is it did not remain truthful or faithful to that particular standard. I'm just wondering, we have a case different than on some of the other issues that Petitioner raises, where the board misstated the standard or considered things that are not proper to consider, insofar as stating the proper standard of review for facts and then doing a bad job of it. Is that really legal error? I believe that that's how the court described it in Alvarado, that the board can't simply state the correct standard and then misapply it or not apply it faithfully. It sure seems we're getting into the facts and determining how well they applied it. Yes, Your Honor, and that's why there is a point at which review of whether the board applied the clear error standard gets awfully close and may even pass into the court's jurisdictional limitations on 1252-HUC. And what the Petitioner is asking for the court to do, to look at the record in detail and conduct this fact-intensive analysis of whether the IJA's findings could never be reversed on clear error review, that, in the government's position, crosses into the court's jurisdictional limitations on 1252-HUC. If the court were to remand, the court would simply recognize that it looks like the board misapplied the clear error standard and send it back to apply it faithfully. That is the cleanest resolution of this case in the government's view at this point. All right. Thank you, Mr. Piccinini. Thank you, Your Honor. Mr. Wilkins for rebuttal. Thank you, Your Honor. As to mootness, this case is not moot. My client proceeding pro se did not know what to ask this court for a stay and was removed. Her current circumstances are actually not in the record, and if the court wants briefing on that, we can provide that. But as to mootness, the Supreme Court held in Niken v. Holder, that's at 556 U.S. at page 435, although removal is a serious burden for many aliens, it is not categorically irreparable. Aliens who are removed may continue to pursue their petitions for review, and those who prevail can be afforded effective relief by facilitation of their return, along with restoration of the immigration status they had upon removal. And that statement in the Supreme Court's opinion in Niken, which was in part a deferral of removal case under Kat, cited the Solicitor General's brief in Niken, and the brief says, in the ordinary case, an alien need not remain in the United States in order to pursue a legal or constitutional claim or benefit from a favorable judicial ruling. The court's review is based on the record and written briefs rather than person testimony. By policy and practice, the government accords aliens who are removed pending judicial review but then prevailed before the courts, but then removed effective relief by facilitating the alien's return to the United States, if relief is accorded. So I think that pretty much clears up in my mind the mootness question. I do think that in answer to your question, Judge Smith, I think it's telling. You asked, you know, what facts are in dispute, and the government said that there were no facts in dispute, right? There's no historical facts either coming from my client. No, that's not what they said. They said, yes, they disagree with your assertion that there are no disputed facts, and then he mentioned that it's not true that she will be tortured. That's what he said, and I wrote it down. So he does disagree with you on that. Right. What the disagreement is is in sifting all the facts, the ultimate legal conclusion as to whether she would be tortured with the acquiescence of the government. That is correct, but there are no historical facts either what Ms. Morales said or what the expert Dr. Borman said that are in dispute. I think what my friend was saying was that some of the facts in the record could be construed to support the government's position as to the ultimate legal question. That's exactly what was going on in Alvarado. In Alvarado, the question was, for immigration purposes, the legitimacy of the alien's marriage, and this court said, yes, there are some facts that would support the government's position that the marriage was not legitimate, and there were some other facts that do support the legitimacy. But it's not our role, this court said, nor the BIA's role, to second-guess the IJ. The IJ made a determination, sifting all the facts, that this was a legitimate marriage. And the legal error is— What this kind of sounds like to me is in a case where we might, where a jury might be asked to decide whether there's a likelihood of future dangerousness by a particular person. That's a factual determination, not a legal one. We're talking here about the likelihood of torture, and it's been pointed out that she's been back twice and hasn't been tortured. That's not a legal issue. That's—whether you want to term it a historical fact or not, it's still a question of fact. With all respect, it is the determination of the legal issue under the regulation, whether there would be acquiescence. That's a matter of law. And that's what this court held essentially in Alvarado and in Okafor. And I think that's why the government, after seeing our brief, has conceded that there is legal error here. Now, we can have a remand, but the remand, I think, Your Honor, would be a foregone conclusion in the light of the difficulty of the circumstances here. Would a remand go to the same board member? I don't know the answer to that, Your Honor. Was a single board member that— It was a single board member, and I believe it was a visiting judge. So I'm not sure that that's the case. I just don't know the answer. Nor do I. All right. If you'd like 30 seconds to close, you may. I just ask that the—oh, I do want to mention one other thing. And we believe there are legal questions here, and that's—the court has jurisdiction and can reverse on our basis that basis that we set forth in our briefs. However, we have already—if the court believes there are factual issues, our brief argues strenuously that in deferral removal cases, the criminal jurisdiction bar does not apply. Thank you, Your Honor. Thank you, Mr. Wolfman. The case is under submission, and we appreciate your willingness to take this on a pro bono basis and for your good work on behalf of your client. Thank you, Your Honor. Last case for today, Stahl.